IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **JON PAUL POWELL**, | Case No. 6:20-cv-01934-IM |
| Plaintiff, | **OPINION AND ORDER** |
| v. | |
| **WELL PATH CARE**, Jail Deputy, **STEPHANIE RIDGLEY**, Provider and Nurse, **JOSH O'HARA**, Nurse, **MRS. GARDNER**, Nurse, and **DEPUTY MCCLURE**, Jail Deputy, | |
| Defendants. | |

Jon Paul Powell, Two Rivers Correctional Institution, Umatilla, OR 97882. Pro Se.

Bruce C. Smith and Iain Armstrong, Lewis Brisbois Bisgaard & Smith, LLP, 888 SW Fifth Avenue, Suite 900, Portland, OR 97204. Attorneys for Defendants Well Path Care, Ridgley, O'Hara, and Gardner. Sebastian Tapia, Lane County Counsel, 125 E Eighth Avenue, Eugene, OR 97401. Attorney for Defendant McClure.

**IMMERGUT, District Judge.**

Plaintiff Jon Paul Powell ("Powell" or "Plaintiff"), a former pretrial detainee at Lane

County Adult Correctional Facility[1] proceeding *pro se*, brings this lawsuit against medical

---

[1] Otherwise referred to as Lane County Jail in the pleadings. *See* ECF 2; ECF 28.

provider WellPath, LLC ("WellPath") and medical personnel Stephanie Ridgley ("Ridgley"),

Josh O'Hara ("O'Hara"), and Elinda Gardner ("Gardner," and collectively, "Medical

Defendants"), as well as Deputy McClure ("McClure") pursuant to 42 U.S.C. § 1983, alleging

his constitutional rights were violated in connection with his recovery from a hernia surgery. *See*

ECF 2 at 1–6.

This matter comes before the Court on Defendant McClure's Motion for Summary

Judgment, ECF 28, and Medical Defendants' Motion for Summary Judgment, ECF 42. For the

reasons that follow, Medical Defendants' Motion for Summary Judgment is GRANTED.

McClure's Motion for Summary Judgment is DENIED; nonetheless, Plaintiff's claims against

McClure are DISMISSED pursuant to 28 U.S.C. § 1915.[2]

## LEGAL STANDARDS

### A. Summary Judgment

A party is entitled to summary judgment if the "movant shows that there is no genuine

dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R.

Civ. P. 56(a). The moving party has the burden of establishing the absence of a genuine dispute

of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The non-movant, in

opposition to the motion, "must set forth specific facts showing that there is a genuine issue for

trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). The court must view the

evidence in the light most favorable to the non-movant and draw all reasonable inferences in the

non-movant's favor. *Clicks Billiards, Inc. v. Sixshooters, Inc.*, 251 F.3d 1252, 1257 (9th Cir.

2001). Although "[c]redibility determinations, the weighing of the evidence, and the drawing of

---

[2] Plaintiff also filed a motion to exclude McClure as a witness, ECF 51, and for appointment of counsel, ECF 50; ECF 53. Because this Court dismisses this case, this Court DENIES these motions AS MOOT.

legitimate inferences from the facts are jury functions, not those of a judge . . . ruling on a motion for summary judgment," the "mere existence of a scintilla of evidence in support of the plaintiff's position [is] insufficient . . . ." *Anderson*, 477 U.S. at 252, 255. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation and quotation marks omitted).

**B.  42 U.S.C. § 1983**

"[Section] 1983 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" *Graham v. Connor*, 490 U.S. 386, 393–94 (1989) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)). To state a claim under Section 1983, a plaintiff must "plead that (1) the defendants acting under color of state law (2) deprived plaintiffs of rights secured by the Constitution or federal statutes." *Gibson v. United States*, 781 F.2d 1334, 1338 (9th Cir. 1986).

A person deprives another of a constitutional right, "within the meaning of § 1983, 'if he does an affirmative act, participates in another's affirmative act, or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made." *Preschooler II v. Clark Cnty. Sch. Bd. of Trs.*, 479 F.3d 1175, 1183 (9th Cir. 2007) (quoting *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978)). Courts require "specific facts as to each individual defendant's" role in the alleged deprivation, and courts "must take a very individualized approach which accounts for the duties, discretion, and means of each defendant." *Leer v. Murphy*, 844 F.2d 628, 633–34 (9th Cir. 1988).

**C.  28 U.S.C. § 1915**

This Court must dismiss an action initiated by a prisoner seeking redress from a governmental entity or officer or employee, if the Court determines that the action (i) is frivolous

or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b). Dismissal is warranted "*at any time* if the court determines that the action or appeal fails to state a claim on which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii) (emphasis added); *see also* 28 U.S.C. § 1915A(b)(1); 42 U.S.C. § 1997e(c)(1). In order to state a claim, a plaintiff must allege facts which, when accepted as true, give rise to a plausible inference that the defendants violated the plaintiff's constitutional rights. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (holding that to survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face'").

## BACKGROUND

The following facts are taken from Plaintiff's Complaint and the parties' materials related to Defendant's Motion for Summary Judgment and are viewed in the light most favorable to Plaintiff, the non-movant. *See Clicks Billiards*, 251 F.3d at 1257.

Plaintiff was a pretrial detainee at Lane County Jail. ECF 2 at 2.[3] On March 12, 2020, Plaintiff reported an allergy to Penicillin ("PCN"). ECF 43-10, Ex. 10. On July 27, 2020, Plaintiff was assessed by Northwest Surgical Specialists as having bilateral inguinal hernias and was scheduled for surgery. ECF 43-1, Ex. 1; ECF 43-2, Ex. 2; ECF 43-3, Ex. 3; ECF 43-11, Ex. 11; ECF 47 at 79. On August 12, 2020, Dr. Kevin Modeste performed bilateral inguinal hernia

---

[3] The Complaint does not make clear whether Plaintiff was a pretrial detainee or sentenced inmate at the relevant time. This Court takes judicial notice of the Oregon State Court docket in *State of Oregon v. Jon Paul Powell*, No. 20CR16829, Lane Cnty. Cir. Ct. (2020). Fed. R. Evid. 201; *Nordell Int'l Res., Inc. v. Triton Indonesia, Inc.*, 139 F.3d 906 (9th Cir. 1998) ("Judicial notice is properly taken of orders and decisions made by other courts or administrative agencies."). Plaintiff was first arraigned on March 16, 2020 and pleaded guilty to the charged offenses on December 1, 2020. The conduct at issue is alleged to have occurred prior to December 1, 2020. *See generally* ECF 2. Therefore, Plaintiff was a pretrial detainee when then relevant conduct occurred.

repair surgery on Plaintiff. ECF 43-5, Ex. 5. Dr. Modeste prescribed Oxycodone and Meloxicam for pain. ECF 43-6, Ex. 6. The doctor also noted Plaintiff had an allergy to Penicillin. *Id.*; *see also* ECF 43-9, Ex. 9 (noting in Northwest Surgical Specialists records of "verified" allergy to Penicillin prior to surgery). The same day, at approximately 12:40 p.m., Plaintiff returned to Lane County Jail. ECF 43-11, Ex. 11. Plaintiff claims that he was not seen by any nurses at Lane County Jail until 7:29 p.m. *See* ECF 47 at 30, 41–42.

On August 12, 2020, Plaintiff asked the jail medical staff for an "additional blanket to keep warm" and "a pillow" and "an additional mattress" to avoid strain on his surgical area. *Id.* at 40–41; *see also id.* at 78 (noting, on August 12, 2020, that Plaintiff asked for "double mattress"). Plaintiff's request was denied the same day. *See id.* at 80 (noting in medical record "not [to] provide second mattress at this time" on August 12, 2020).

Although Plaintiff had been prescribed Oxycodone, jail medical staff did not provide him with the medication. Instead of Oxycodone, jail medical staff provided Plaintiff with "Tylenol 3," which contains Codeine. ECF 43-11, Ex. 11; *see also* ECF 47 at 19 (responding to interrogatory by Defendant Ridgley that "Oxycodone is not one of the medication[ ]s available at the jail and Tylenol 3, meloxicam, and ibuprofen were prescribed to plaintiff for pain management"); *id.* at 20 (responding to interrogatory by Defendant O'Hara that "Oxycodone was not an available pain medication at the jail"). Medical records reflect that Plaintiff received Tylenol 3 ten times between the evening of August 12, 2020 and morning of August 16, 2020. *Id.* at 32, 57. Plaintiff declares that he "never received nor ingested the tylenol 3 codiene [sic] ten times." *Id.* at 53; *see also id.* at 29–31 (handwritten notation that Plaintiff received Tylenol at noon on August 12, 2020, which Plaintiff denies). The records also reflect that Plaintiff received

Meloxicam nine times during that same time period, as well as twice on August 17, 2020. *Id*. at 32, 57.

Plaintiff avers in his opposition papers that on August 12, 2020, when he took the medication, he was unaware that medical staff at Lane County Jail had "switched" the Oxycodone for Tylenol 3. *Id.* at 48.

During his shift which spanned August 12 to August 13, 2020, Defendant O'Hara asked Plaintiff what his level of pain was on a scale of one to ten, with ten being the greatest amount of pain. *Id.* at 21–22. Plaintiff responded that his pain was a ten, and O'Hara then asked "if someone were to kick [Plaintiff] in the surgical area would that be a 10." *Id*. at 22. O'Hara asserted this question was "to get a true assessment of [P]laintiff's pain level." *Id*.; *see also* ECF 2 at 13.

On August 13, 2020, Nurse Margaret Bishop reported that Plaintiff took the Tylenol 3 pill she provided to him, and then stated that "I'm taking this because I'm in excruciating pain but I'm allergic to Codeine. It gives me hives." ECF 43-11, Ex. 11. Plaintiff then lifted his shirt to show his back to the nurse. *Id*. Nurse Bishop reported that she saw no "rash or any discoloration" on his back and that Plaintiff is "able to walk back to bunk without apparent difficulty." *Id*. Nurse Bishop reported that she "reviewed documentation from [the jail] and Northwest Surgical Specialists from 08/04/2020," and that both "list only Penicillin as an allergy." *Id*. Nonetheless, Nurse Bishop stated that she "[w]ill continue to monitor [vital signs] for acute changes." *Id*. Plaintiff's account of events is that the nurse reported to him that she saw "something, appears to be redness and rash." ECF 47 at 48.

Later that night, Plaintiff reported "his pain level is 10/10." ECF 43-8, Ex. 8. Jail medical staff explained to Plaintiff that they "do not give heavier narcotics" for "minor"

PAGE 6 – OPINION AND ORDER

surgeries such as his and noted that Plaintiff "is able to ambulate around the room." *Id*. Plaintiff

denies that anyone "explained any such thing to" him. ECF 47 at 39.

On August 14, 2020, Plaintiff again reported "excruciating pain," and a "rash" on his

back. ECF 43-8, Ex. 8. Medical staff noted that "he gets up easily[,] stands straight and moves to

the door," and that no rash, scratch marks, or redness were observed on Plaintiff's back. *Id*.

According to the records, Plaintiff received Tylenol 3 at 5:06 a.m. on August 16, 2020.

ECF 47 at 57. That same day at 8:28 p.m., a note was entered in Plaintiff's medical records that

staff discontinued Tylenol 3 "due to allergy" and started providing Ibuprofen. *Id*. at 80. Plaintiff

did not receive any Tylenol 3 after August 16, 2020. On August 20, 2020, Plaintiff's medical

records were updated to reflect a Codeine allergy. *Id*. at 78.

Between August 17 and 26, 2020, Plaintiff received Ibuprofen twenty-three times, and

refused it twice, on August 25 and 26, 2020. *Id*. at 57–58; *see also* ECF 43-17, Ex. 17, at 5

(noting that on August 26, 2020, Plaintiff refused Ibuprofen stating "I don't want any right

now").

One to two days following his surgery, Plaintiff complained of a "swollen and painful left

testicle." ECF 43-14, Ex. 14. He was examined by Northwest Surgical Specialists, but the doctor

was "unable to do a full examination since [Plaintiff] requested to go back to his room to rest."

*Id*. Following the examination, Plaintiff was ordered to use an "[i]ce bag on and off for 20

minutes while awake for next 48 hours." ECF 43-15, Ex. 15, at 1; *see also id*. at 2 (directing use

of ice or cold pack for swelling); *see also* ECF 47 at 78 (noting, on August 12, 2020, that

Plaintiff should apply "[i]ce packs to sit off/on x 48 hours"). On August 13, 2020, Plaintiff was

offered an ice pack, but Plaintiff refused, stating that "[t]he hospital told me not to do cold, it

makes me contract." ECF 43-16, Ex. 16, at 1; *see also* ECF 47 at 40 (explaining why Plaintiff

refused ice). On August 14, 2020, Plaintiff was again offered an ice pack and refused. ECF 43-16, Ex. 16, at 2. That same day, the record reflects that Plaintiff refused "Vitals" and "Med/Obs." ECF 43-17, Ex. 17, at 3. On August 19, 2020, Plaintiff refused "vital signs" and "Seg/Med." *Id.* at 4. On August 21, 2020, a nurse sent a note to Plaintiff stating that she "spoke with Northwest Surgical Services" and that the swelling "can be normal for up to a few weeks." ECF 43-16, Ex. 16, at 3. She further stated that ice treatment, which Plaintiff had been refusing, "is an important aspect to keep [his] swelling down." *Id.*

On or around August 19, 2020, Plaintiff requested toilet paper from Defendant McClure. ECF 30-1, Ex. 3, at 1–2. As Plaintiff was returning to his bunk, McClure, opened the cell door and threw a roll of toilet paper at Plaintiff. *Id.*; *see also* ECF 2-1 at 4. Plaintiff was hit on the right side of his face and head, "with enough momentum . . . to then cause [him] to flinch and strain [his] body, and he "semi fell back onto the cell bunk." ECF 30-1, Ex. 3, at 2.

Plaintiff brings claims under 42 U.S.C. § 1983, alleging that McClure and Medical Defendants violated his constitutional rights in connection with his recovery from hernia surgery. ECF 2 at 4; *see generally* ECF 2-1.[4]

---

[4] Plaintiff brings claims under "Article I (one) Section # 13 and Section # 16." ECF 2 at 4 (emphasis omitted). ECF 2 at 4. "The Supreme Court has instructed the federal courts to liberally construe the inartful pleading of pro se litigants." *Eldridge v. Block*, 832 F.2d 1132, 1137 (9th Cir. 1987) (quotation marks and citation omitted). Article I, section 13 of the Oregon Constitution provides that "[n]o person arrested, or confined in jail, shall be treated with unnecessary rigor," and section 16 provides, inter alia, that "[c]ruel and unusual punishments shall not be inflicted." Or. Const. art. I, §§ 13, 16. Construing the pleadings liberally, this Court construes Plaintiff to be alleging violations of the Fourteenth Amendment of the United States Constitution. *See Redman v. Cnty. of San Diego*, 942 F.2d 1435, 1440 n.7 (9th Cir. 1991) (abrogated on other grounds) ("[W]hile the eighth amendment proscribes cruel and unusual punishment for convicted inmates, the due process clause of the fourteenth amendment proscribes any punishment of pretrial detainees.").

## DISCUSSION

### A.  Medical Defendants

Plaintiff asserts that Medical Defendants violated his Fourteenth Amendment rights by providing him with inadequate medical care following his hernia surgery. For the reasons that follow, this Court finds that summary judgment is appropriate. Plaintiff has not established that Medical Defendants acted with reckless disregard to his health, and there are no genuine issues of material fact as to deliberate indifference. Accordingly, Medical Defendants are entitled to judgment in their favor as a matter of law.[5]

A pretrial detainee's right to adequate medical care arises under the Fourteenth Amendment's Due Process Clause. *Gordon v. Cnty. of Orange*, 888 F.3d 1118, 1124–25 (9th Cir. 2018).[6] "Due process requires that a pretrial detainee not be punished. A sentenced inmate, on the other hand, may be punished, although that punishment may not be cruel and unusual under the Eighth Amendment." *Vazquez v. Cnty. of Kern*, 949 F.3d 1153, 1163 (9th Cir. 2020) (internal quotation marks omitted) (quoting *Bell v. Wolfish*, 441 U.S. 520, 537 n.16 (1979)). The Ninth Circuit has stated that claims brought by pretrial detainees alleging violations of the right

---

[5] Medical Defendants also move for summary judgment on claims of medical negligence because Plaintiff cannot show that they violated the standard of care. ECF 42 at 7 ("Motion 2"). There is no cognizable medical malpractice claim under § 1983. *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976). Because medical malpractice cannot form the basis of a § 1983 action under the Eighth Amendment, and Plaintiff has not brought any claims under Oregon law, *see generally* ECF 2, this Court declines to consider this motion.

[6] Medical Defendants' briefing discusses the Eighth Amendment standard for deliberate indifference. *See* ECF 42 at 5–6. While the standards under the Eighth and Fourteenth Amendments are similar, *Frost v. Agnos*, 152 F.3d 1124, 1128 (9th Cir. 1998), this Court proceeds under the Fourteenth Amendment deliberate indifference standard, given Plaintiff was a pretrial detainee at the time of the alleged misconduct.

to adequate medical care are evaluated under an objective deliberate indifference standard.

*Gordon*, 888 F.3d at 1124–25; *Horton by Horton v. City of Santa Maria*, 915 F.3d 592, 602 (9th Cir. 2019).

> [T]he elements of a pretrial detainee's medical care claim against an individual defendant under the due process clause of the Fourteenth Amendment are: (i) the defendant made an intentional decision with respect to the conditions under which the plaintiff was confined; (ii) those conditions put the plaintiff at substantial risk of suffering serious harm; (iii) the defendant did not take reasonable available measures to abate that risk, even though a reasonable official in the circumstances would have appreciated the high degree of risk involved—making the consequences of the defendant's conduct obvious; and (iv) by not taking such measures, the defendant caused the plaintiff's injuries.

*Gordon*, 888 F.3d at 1125. "With respect to the third element, the defendant's conduct must be objectively unreasonable, a test that will necessarily turn[ ] on the facts and circumstances of each particular case." *Id.* (internal quotation marks omitted) (quoting *Castro v. Cnty. of Los Angeles*, 833 F.3d 1060, 1071 (9th Cir. 2016)). Medical malpractice alone is insufficient to state a claim: a "mere lack of due care by a state official" does not deprive a plaintiff of his rights under the Fourteenth Amendment. *Castro*, 833 F.3d at 1071 (internal quotation marks omitted) (quoting *Daniels v. Williams*, 474 U.S. 327, 331 (1986)). Accordingly, the pretrial detainee must "prove more than negligence but less than subjective intent—something akin to reckless disregard." *Id.*; *see also Fricano v. Lane Cnty.*, No. 6:16-cv-01339-MC, 2018 WL 2770643, at *5 (D. Or. June 8, 2018) ("[A] plaintiff must show that the denial, delay, or otherwise unreasonable course of medical care was taken in 'reckless disregard' of an excessive risk to the plaintiff's health or safety.").

1.  **No Genuine Issues Regarding Whether Medical Defendants Were Deliberately Indifferent as to Plaintiff's Medication**

Plaintiff alleges that Medical Defendants prevented him from taking his prescribed pain medication following his hernia surgery, and instead provided him with medication to which he has an allergy and which he found insufficient for his pain level. *See, e.g.*, ECF 2-1 at 1 (alleging WellPath "took away [his] prescribed pain medication that the surgeon-hospital staff at the hospital had prescribed to [him]" and instead gave him medication to which he is allergic (internal quotation marks omitted)); *id*. at 3 (noting Defendant Gardner "didn't give me anything for my pain expect Meloxicam" which is "an anti-inflammatory").

Because there are no genuine issues of material fact as to whether Medical Defendants were deliberately indifferent with respect to Plaintiff's medication, summary judgment in favor of Medical Defendants is warranted on this claim.

The record reflects that Plaintiff was assessed for hernia surgery and received surgery by Dr. Kevin Modeste on August 12, 2020. *See* ECF 43-1, Ex. 1; ECF 43-2, Ex. 2; ECF 43-3, Ex. 3; ECF 43-5, Ex 5. Dr. Modeste prescribed Plaintiff with Oxycodone as well as Meloxicam, both for pain. ECF 43-6, Ex. 6. Medical Defendants testified that Oxycodone is not one of the medications available at the jail. ECF 47 at 19. Though Plaintiff would have preferred to receive Oxycodone, "a difference of opinion [between Plaintiff and his medical providers regarding his medical treatment] does not rise to the level of deliberate indifference." *Hodges v. Corizon Health, Inc.*, 837 F. App'x 466, 469 (9th Cir. 2020) (citing *Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989)). There is no evidence in the record that prescribing Tylenol 3, or later, Ibuprofen, was medically unacceptable under the circumstances, or that it was prescribed in conscious disregard of an excessive risk to Plaintiff's health. *Toguchi v. Chung*, 391 F.3d 1051, 1058 (9th Cir. 2004). The record reflects that at the time Plaintiff was prescribed Tylenol 3 by

Medical Defendants, his medical record only listed Penicillin as an allergy. ECF 43-6, Ex. 6; ECF 43-9, Ex. 9 (noting the Penicillin allergy as "verified" and "critical"); ECF 43-10, Ex. 10.

As to Plaintiff's contention that Medical Defendants were deliberately indifferent to his allergy to Tylenol 3 and Codeine, this Court finds that the evidence in the record does not support such a claim. The records indicate that Plaintiff reported hives due to Codeine on August 13, 2020—his second day on the medication—and a nurse examined his back but did not see any evidence of hives. ECF 43-11, Ex. 11. Moreover, the nurse then reviewed Plaintiff's medical records, confirmed Codeine was not listed as an allergy, and noted that she would continue to monitor Plaintiff. *See id*. On August 14, Plaintiff again reported a rash, but none was observed. ECF 43-8, Ex. 8. Nonetheless, on August 16, Medical Defendants discontinued Tylenol 3 due to Plaintiff's alleged allergy and began treatment with Ibuprofen instead. *See* ECF 47 at 57. Medical Defendants updated his medical record to reflect a Codeine allergy. *Id*. at 78. The evidence demonstrates that Plaintiff was examined when he complained of an allergic reaction, he was monitored for adverse effects, and Medical Defendants ceased providing him with Tylenol 3 by August 16. This evidence falls short of the deliberate indifference standard. Even if the evidence demonstrated negligence or medical malpractice by Medical Defendants, this would not be sufficient to show a violation of his Fourteenth Amendment rights. *See Wilhelm v. Rotman*, 680 F.3d 1113, 1122 (9th Cir. 2012).

### 2. No Genuine Issues Regarding Whether Medical Defendants Were Deliberately Indifferent as to Observation, Bedding, and Ice

The evidence fails to support Plaintiff's other contentions that Medical Defendants violated his Fourteenth Amendment rights. Plaintiff alleges that Medical Defendants failed to observe or check in on him for seven hours following his surgery and failed to provide him with

sufficient bedding; Plaintiff also appears to object to Medical Defendants providing him with ice. *See* ECF 2-1 at 2.

Plaintiff contends that following his surgery, he was placed in an observation cell and was not seen by Medical Defendants for seven hours and twenty-nine minutes. *See* ECF 47 at 42. Plaintiff argues that "there could have been possible post surgery complications" as a result of no one observing him. *Id*. at 43 (emphasis in original). "Mere delay is insufficient to state a claim of deliberate medical indifference unless the delay was harmful." *McCright v. Beamer*, No. 2:17-cv-00942-MO, 2021 WL 1215778, at *2 (D. Or. Mar. 30, 2021) (citing *Shapley v. Nev. Bd. of State Prison Comm'rs*, 766 F.2d 404, 407 (9th Cir. 1985)). There is no evidence that Plaintiff suffered from any post-surgical complications as a result of any delay in observation. Because there is no evidence of the delay causing any injury, it falls short of the deliberate indifference standard. *See Gordon*, 888 F.3d at 1125. And, as stated above, negligence does not establish deliberate indifference.

Plaintiff also alleges that he requested additional bedding such as a pillow and mattress, but Medical Defendants refused. This allegedly inadequate bedding did not allow him to "relax" and "heal," and Medical Defendants "failed miserably to give [him] the proper treatment and follow up aftercare." ECF 2-1 at 2–3; *see also* ECF 47 at 78 (noting in medical record that Plaintiff "ask[ed] for [a] double mattress," on August 12, 2020). Additionally, following surgery, Plaintiff complained of a "swollen and painful left testicle." ECF 43-14, Ex. 14. He was examined by Northwest Surgical Specialists who were unable to do a full examination due to Plaintiff's request to return to his room. *Id*. Following the examination, Plaintiff was provided with ice for the swelling. ECF 43-16, Ex. 16. Plaintiff refused the ice pack, stating he was told otherwise at the hospital and that the ice caused pain and coldness. *Id*.; ECF 2-1 at 2; ECF 47 at

40. Plaintiff has failed to demonstrate a genuine issue of material fact as to deliberate indifference. There is no evidence that the "conditions put [Plaintiff] at [a] substantial risk of suffering serious harm," or that the conditions caused him harm. *Gordon*, 888 F.3d at 1125. And, to the extent that Plaintiff argues that the additional bedding was medically necessary, or that the ice was medically contraindicated, as stated above, deliberate indifference cannot rely on a mere difference of opinion over care between Plaintiff and medical providers.

### 3.  No Genuine Issues Regarding Whether Josh O'Hara's Comment Violated Plaintiff's Fourteenth Amendment Rights

Plaintiff contends that O'Hara made a "veiled threat" to him. ECF 47 at 27, 45. Plaintiff states that "[a]t midnight of the 12th of August," he asked the medical staff for assistance with his discomfort. ECF 2-1 at 6. O'Hara then asked Plaintiff to rate his pain on a scale of one to ten, ten being the highest. *Id*. Plaintiff responded that his pain was "a ten easily," to which O'Hara asked, in substance, if Plaintiff were to be kicked in the area of his surgery, what would his pain level be. *Id*. (emphasis in original). Plaintiff characterizes this question as "extremely harsh," and O'Hara's demeanor as "mean, malicious and harsh." ECF 47 at 45. There is no dispute that O'Hara asked this question. O'Hara claims that it was not a threat, rather that he asked the question "in order to get a true assessment of [P]laintiff's plain level." ECF 47 at 22 .

At summary judgement, this Court will view the evidence in the light most favorable to Plaintiff and will not make any credibility determinations. *Anderson*, 477 U.S. at 255. However, Plaintiff must still "set forth specific facts showing that there is a genuine issue for trial." *Id*. at 256. Plaintiff has not done so here. While this Court appreciates that medical providers should be cognizant of the ways in which they phrase their questions during treatment, there is no evidence that by asking this question O'Hara violated Plaintiff's Fourteenth Amendment rights. Plaintiff has provided no support for this contention, and this Court finds that on this record, O'Hara's

comment does not establish deliberate indifference. There is no evidence that it put Plaintiff at "substantial risk of suffering serious harm," or that it caused Plaintiff any injuries. *Gordon*, 888 F.3d at 1125. There is no evidence that by asking this question, O'Hara failed to treat or address a medical need, or that he acted in reckless disregard of an excessive risk to Plaintiff's health or safety.

## B. Defendant McClure

Plaintiff asserts that Defendant McClure violated his constitutional rights by subjecting him to cruel and unusual punishment by throwing a roll of toilet paper at him. McClure seeks summary judgment in his favor on the basis that Plaintiff failed to exhaust his administrative remedies. This Court finds that genuine issues of material fact preclude judgment as a matter of law on the issue of exhaustion, and McClure motion is properly denied. However, this Court dismisses Plaintiff's claims against McClure because Plaintiff "fails to state a claim on which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii).

### 1. Exhaustion

The Prison Litigation Reform Act ("PLRA") requires that prisoner exhaust all "available" administrative remedies prior to filing an action under any federal law. 42 U.S.C. § 1997e(a); *see also Kingsley v. Hendrickson*, 576 U.S. 389, 402 (2015) ("[T]he [PLRA] . . . applies to both pretrial detainees and convicted prisoners." The exhaustion requirement affords corrections officials the opportunity to engage in corrective action that could obviate the need for litigation as well as create an administrative record useful to litigation. *Porter v. Nussle*, 534 U.S. 516, 524 (2002). "[T]he PLRA exhaustion requirement requires proper exhaustion." *Woodford v. Ngo*, 548 U.S. 81, 93 (2006). "[A] prisoner must complete the administrative review process in accordance with the applicable procedural rules, including deadlines, as a precondition to brining suit in federal court." *Id*. at 88.

PAGE 15 – OPINION AND ORDER

To be considered an "available" administrative remedy, the remedy must be capable of use by the prisoner. *Albino v. Baca*, 747 F.3d 1162, 1171 (9th Cir. 2014). An administrative remedy is unavailable when "it operates as a simple dead end," it is "so opaque that it becomes . . . incapable of use," or where "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Ross v. Blake*, 578 U.S. 632, 643–44 (2016).

The PLRA's exhaustion requirement is an affirmative defense that the defendant must advance, not a pleading requirement for the plaintiff. *Albino*, 747 F.3d at 1172. Once the defendant has shown that an available administrative remedy existed and the plaintiff did not exhaust, the plaintiff must "show[ ] that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him." *Id.* (citation omitted). The ultimate burden of proof remains with the defendant. *Id*. Whether a claim is barred by an exhaustion defense "should be decided, if feasible, before reaching the merits of a prisoner's claim." *Id.* at 1170. "If the district judge holds that the prisoner has exhausted available administrative remedies, that administrative remedies are not available, or that a prisoner's failure to exhaust available remedies should be excused, the case may proceed to the merits." *Id*. at 1171.

In his motion, McClure advances only the argument that Plaintiff failed to exhaust administrative remedies and that no exception to exhaustion applies. *See* ECF 28 at 4–8; ECF 40 at 1–3. In support of this defense, McClure submits evidence indicating that Plaintiff did not successfully proceed through the steps required to file a grievance against him.[7] *See* ECF 29,

---

[7] The first step requires the inmate to "initiate the grievance process" by "send[ing] an Inmate Request Form to the Grievance Supervisor" and completing the "Grievance Form." *See* ECF 29-1, Ex. 1, at 32–33. The "involved employee" must then "respond to the grievance in

Cleland Decl., at ¶¶ 9–11 (explaining that the jail "has no record of this grievance or an associated Inmate Request Form" and "Mr. Powell did not submit an inmate request form or any other document inquiring about the status of his grievance against Deputy McClure"). He also argues that Plaintiff was not excused from the exhaustion requirement due to fear of retaliation, as Plaintiff "provides no factual support that he actually believed retaliation would result if he filed a grievance" and that he "could not have reasonably believed that a laugh alone would imply a sufficiently severe threat of retaliation." ECF 28 at 5–6; *see, e.g.*, ECF 30-3, Ex. 5, at 1 (citing "fear[ ] of retaliation" based on McClure's supervisor laughing at McClure's conduct toward Plaintiff). McClure has met his initial burden of showing that there was an available administrative remedy, and that Plaintiff did not exhaust that remedy. *See Albino*, 747 F.3d at 1172.

The burden therefore shifts to Plaintiff to "show[ ] that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him." *Id.* (citation omitted). First, Plaintiff argues that he sufficiently exhausted because McClure "knew he was being grieved" and that Plaintiff "did grieve [him]" by filing the now-missing form. ECF 35 at 1 (emphases and internal quotation marks omitted); *see also* ECF 36, Powell Decl., at 3 (averring that Plaintiff "did submit and exhaust his administrative remedies by the actual writing of the grievance and then submitting it into the cell door to be picked up" (emphasis and internal quotation marks omitted)). Additionally, Plaintiff asserts that he is excused from exhaustion due to fear of retaliation, based on knowledge that McClure and

_____

writing and return the form" to the inmate within seven days. *Id*. at 33. If the inmate is not satisfied with the response, the inmate must appeal. *Id*. (providing two additional levels of review).

his supervisor laughed about McClure throwing the roll of toilet paper at Plaintiff—the subject of Plaintiff's allegations against McClure. ECF 35 at 1, 5, 8–9.

### a. Plaintiff is Not Excused from Exhaustion for Fear of Retaliation

An administrative remedy is "effectively unavailable" when "a prisoner has reason to fear retaliation for reporting an incident." *Rodriguez v. Cnty. of Los Angeles*, 891 F.3d 776, 792 (9th Cir. 2018). "In order for a fear of retaliation to excuse the PLRA's exhaustion requirement, the prisoner must show that (1) 'he actually believed prison officials would retaliate against him if he filed a grievance'; and (2) 'a reasonable prisoner of ordinary firmness would have believed that the prison official's action communicated a threat not to use the prison's grievance procedure and that the threatened retaliation was of sufficient severity to deter a reasonable prisoner from filing a grievance.'" *Id.* (quoting *McBride v. Lopez*, 807 F.3d 982, 987 (9th Cir. 2015)).

Plaintiff's contention that he feared retaliation fails as a matter of law. "[G]eneral and unsubstantiated fears about possible retaliation" do not satisfy this exception. *Id*. at 794. Even if Plaintiff subjectively viewed McClure and his supervisor laughing about the incident as threatening, the laughter cannot reasonably be viewed as a threat of retaliation if Plaintiff filed a grievance. Here, though the laughter may have been inappropriate and seemed threatening *to Plaintiff*, *see* ECF 30-3, Ex. 5, at 1, this Court finds that there is "no objective indication that a reasonable inmate would have understood the [laughter] to be aimed at deterring [Plaintiff] from filing a grievance." *McBride*, 807 F.3d at 988; *see also id.* (noting a "hostile interaction" alone is insufficient to render the grievance system unavailable and pointing to cases in which prison officials "explicitly threated retaliation if the prisoner used the prison's grievance system"); *Rodriguez*, 891 F.3d at 793 (finding reasonable belief of retaliation when prison officials directly threatened prisoners with violence if they reported mistreatment). Accordingly, Plaintiff has

failed to demonstrate that he was excused from exhausting his administrative remedies due to fear of retaliation.

### b. Genuine Issues Regarding Processing of Grievance Prevent Judgment as Matter of Law on Exhaustion

The Ninth Circuit has also recognized that "[w]hen prison officials improperly fail to process a prisoner's grievance, the prisoner is deemed to have exhausted available administrative remedies," because the officials have "thwarted" the inmate's ability to take advantage of the grievance process. *Andres v. Marshall*, 867 F.3d 1076, 1079 (9th Cir. 2017) (internal quotation marks and citation omitted); *see also Benson v. Peters*, No. 2:14-cv-00132-CL, 2016 WL 259701, at *4 (D. Or. Jan. 20, 2016) ("The 'effectively unavailable' standard is met when a prisoner shows he or she took 'reasonable and appropriate steps to exhaust' but was prevented from exhausting by the actions of prison officials." (quoting *Nunez v. Duncan*, 591 F.3d 1217, 1224 (9th Cir. 2010)). This occurs, for instance, when prison officials fail to timely respond to a grievance or indefinitely delay their response. *Andres*, 867 F.3d at 1079 (collecting cases). Prison officials need not intend to prevent an inmate from accessing administrative remedies; mere mistake can suffice to render remedies unavailable. *Benson*, 2016 WL 259701, at *4.

When viewed in the light most favorable to Plaintiff, Plaintiff has presented adequate evidence that he was excused from exhaustion to defeat summary judgment. A reasonable factfinder could conclude, taking these facts and drawing all reasonable inferences in Plaintiff's favor, that Plaintiff appropriately initiated the grievance process by submitting the grievance form, but that his ability to exhaust was thwarted when he received no response, potentially because the form was lost prior to reaching the appropriate individual. *See* ECF 35 at 3; ECF 30-4, Ex. 6, at 3–4 (explaining in deposition that after filing a grievance, typically "they respond"). Because Plaintiff never received a response, he could not proceed to the second step of the

grievance process, or ultimately exhaust. *See Coffelt v. Laphan*, No. 6:20-cv-00849-AC, 2021 WL 6691754, at *5 (D. Or. Aug. 26, 2021), *report and recommendation adopted*, No. 6:20-cv-00849-AC, 2022 WL 225270 (D. Or. Jan. 25, 2022). McClure bears the ultimate burden on exhaustion and at this stage, genuine issues of material fact and credibility determinations prevent this Court from finding McClure is entitled to judgment as a matter of law on the issue of exhaustion.

### 2.  Dismissal is Warranted Under 28 U.S.C. § 1915

The PLRA provides that this Court "shall dismiss the case at any time if the court determines that the action . . . fails to state a claim on which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii). Because Plaintiff fails to state a claim against McClure, this Court sua sponte dismisses as to McClure.

Plaintiff contends that McClure violated the constitutional prohibition against cruel and unusual punishment.[8] As explained above, at the time of the alleged misconduct, Plaintiff was a pretrial detainee, and thus his claim is analyzed under the Fourteenth Amendment rather than the Eighth Amendment. *See Vazquez*, 949 F.3d at 1163. "This distinction is largely academic, however, because 'pretrial detainees' rights under the Fourteenth Amendment are comparable to prisoners' rights under the Eighth Amendment' and courts apply the same standards." *Hill v. Skrah*, No. 1:16-cv-00492-PK, 2017 WL 1364616, at *4 (D. Or. Mar. 14, 2017), *report and*

---

[8] Plaintiff pleads violations of "Article I (one) Section #13 and Section #16." ECF 2 at 4. Article 1, section 13 of the Oregon Constitution states, "No person arrested, or confined in jail, shall be treated with unnecessary rigor." Or. Const. art. I, § 13. Article 1, section 16 states, "Cruel and unusual punishments shall not be inflicted." Or. Const. art. I, § 16. Construing the pleadings liberally, the Court understands Plaintiff's claims to allege violations of the Fourteenth and Eight Amendments. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

*recommendation adopted,* No. 1:16-cv-00492-PK, 2017 WL 1393049 (D. Or. Apr. 11, 2017)

(quoting *Frost,* 152 F.3d at 1128)).

Where, as here, a prison official is alleged to have taken direct action against Plaintiff, the

court determines whether excessive force was used. *Pitcher v. Garrett*, No. 3:20-cv-869-SI, 2021

WL 1255179, at *2 (D. Or. Apr. 5, 2021) (explaining that allegations of "direct action to hurt

Plaintiff" are analyzed under an excessive force framework). To prevail on an excessive force

claim under the Fourteenth Amendment, Plaintiff must show that "the force purposely or

knowingly used against him was objectively unreasonable." *Kingsley*, 576 U.S. at 397. The test

is "solely an objective one," but "a court must judge the reasonableness of the force used from

the perspective and with the knowledge of the defendant officer." *Id*. at 397, 399.

The Supreme Court has explained that not "every malevolent touch by a prison guard

gives rise to a federal cause of action." *Hudson v. McMillian*, 503 U.S. 1, 9 (1992). The Eighth

Amendment prohibition on cruel and unusual punishment "necessarily excludes from

constitutional recognition *de minimis* uses of physical force." *Id*. at 9–10. Plaintiff alleges that

McClure "assaulted" him by "throwing a full roll of toilet paper at [him]" after he returned to the

jail from him hernia surgery. ECF 2-1 at 4. The toilet paper roll hit Plaintiff in the face, and

while Plaintiff admits that "a roll of toilet paper is soft," he alleges that it was nonetheless an

assault, rude, disrespectful, and "highly unprofessional." *Id*. at 4–5. While a better course of

conduct very likely would have been for McClure to hand Plaintiff the toilet paper roll or to

place it in his cell, Plaintiff has not pleaded more than a de minimis use of force and fails to state

a constitutional violation. *See, e.g.*, *Smith v. Meyer*, No. 6:21-cv-00997-IM, 2021 WL 3172921,

at *3 (D. Or. July 26, 2021) (placing prisoner in handcuffs was de minimis use of force and was

not "repugnant to the conscious of mankind" (internal quotation marks and citation omitted));

*Anthony v. Schackmann*, 402 F. App'x 207, 208 (9th Cir. 2010) (finding "unprovoked, single slap constituted only de minimis force"); *Jordan v. Edwards*, No. CV 15-3125 DOC (FFM), 2016 WL 2753389, at *5 (C.D. Cal. Apr. 18, 2016), *report and recommendation adopted,* No. CV 15-3125 DOC (FFM), 2016 WL 2743457 (C.D. Cal. May 10, 2016) (finding "[a] shove and rough handcuffing are relatively minor uses of force").

Additionally, for claims to which the PLRA applies, such as this claim, the Ninth Circuit "requires a prior showing of physical injury that need not be significant but must be more than *de minimis*." *Oliver v. Keller*, 289 F.3d 623, 627 (9th Cir. 2002) (citing 42 U.S.C. § 1997e(e)). Plaintiff alleges that he strained his stomach and "semi f[e]ll" onto a cell bunk, and that he felt "violated, disrespected and humiliated." ECF 2-1 at 4–5. While unpleasant, Plaintiff's injuries are no more than de minimis, and therefore fail under the PLRA. *See, e.g.*, *Meza v. Dir. of Cal. Dep't of Corr.*, No. 1:05-CV-01180-OWW-LJO-P, 2006 WL 1328220, at *3 (E.D. Cal. May 15, 2006) (finding insufficient a bruise on head after the plaintiff's head was "slammed" into the wall once).

Because the force used against Plaintiff was not objectively unreasonable, Plaintiff has failed to state a claim against McClure. Accordingly, the claim is properly dismissed. The Complaint includes no factual allegations that suggest McClure violated Plaintiff's constitutional rights, and the Complaint's deficiencies cannot be remedied by amendment. Because amendment would be futile, Plaintiff's claims against McClure are properly dismissed with prejudice. *See Franklin v. Murphy*, 745 F.2d 1221, 1228 n.9 (9th Cir. 1984).

## CONCLUSION

For the reasons stated above, this Court GRANTS Medical Defendants' Motion for Summary Judgment, ECF 42, and this Court DENIES McClure's Motion for Summary Judgment, ECF 28. Nevertheless, this Court DISMISSES Plaintiff's claims against McClure

because Plaintiff has failed to state a claim. 28 U.S.C. § 1915(e)(2)(B)(ii). This case is

DISMISSED with prejudice and without leave to amend. All pending motions, ECF 50, 51, 53,

are DENIED AS MOOT.

**IT IS SO ORDERED**.

DATED this 8th day of March, 2022.

/s/ Karin J. Immergut
Karin J. Immergut
United States District Judge